UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND CONTEE<br><br>    Plaintiff,<br><br>v.<br><br>GIANT OF MARYLAND LLC<br><br>    Defendant. | Civil Action No. 05-2475<br>(RCL) |

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR TO TRANSFER**

Giant's motion to dismiss and motion to transfer both lack merit, the former because plaintiff's Amended Complaint, which names only a single defendant, plainly satisfies the criteria of 28 U.S.C. § 1391(b)(1), the latter because Giant has not shown any inconvenience at all flowing from trying this case in this Court, let alone the degree of inconvenience required to disturb the plaintiff's choice of forum under 28 U.S.C. § 1404(a).

## BACKGROUND

Plaintiff Raymond Contee, an African-American, began at Giant as a produce worker in 1982 and moved up through several management jobs. In February 2001, when Contee was working at the Giant store in Friendship Heights in Washington, D.C., a three-member panel selected him for promotion to Produce Specialist, whose duties entail servicing and supervising the produce departments in a number of Giant stores. [Amended Complaint, ¶ 5.]

Contee was assigned to Giant's Southern Region, where he reported to Kevin Hayes, the Regional Merchandising Manager. Contee was the first African-American Produce Specialist in the region and only the second African-American at Giant to serve as a Produce Specialist

anywhere. His territory embraced all Giant's stores in the District of Columbia, as well as some in suburban Maryland. [*Id.*, ¶¶ 6-8.]

Contee experienced discriminatory treatment throughout his tenure under Kevin Hayes, who had no other black employees and who was not involved in the decision to promote Contee. For example, Hayes called Contee "boy" in conversation; he talked to him about the size of black men's genitalia and said, "I know how you black guys are"; and perhaps most significant, Hayes told Contee more than once that he had never before had to work with "someone like you," meaning someone African-American. [*Id.*, ¶¶ 7, 9.]

In April 2002, Hayes put Contee on an unwarranted Performance Improvement Plan. At that time, Hayes told Contee that no matter what he did, Hayes would insure that he was removed from the Produce Specialist position. Hayes also told Contee that he should resign but that he could "drag it out" if he wanted to. [*Id.*, ¶ 11.]

Contee did not resign, and in July 2002 Hayes changed his territory, which had included all Giant stores in the District of Columbia and some in Maryland, to a less desirable territory comprised of stores in Maryland and Virginia. This change was intended to force Contee to resign or, failing that, to make it more difficult for him to perform successfully. Shortly before Contee's Performance Improvement Plan was supposed to end in August 2002, Hayes told him that he was going to be "toast," and he repeatedly badgered Contee about resigning. [*Id.*, ¶¶ 11-12.]

Also in August 2002, Contee complained to Giant's HR Director and to a company EEO officer about the discriminatory treatment he was experiencing. Hayes was aware of these complaints and responded in September by putting Contee on an unwarranted 90-day probation, which at Giant is the final step before demotion or discharge. The probation included certain

2

goals, which Contee was told were imposed because of problems with his stores' "shrinkage numbers," which reflect the amount of waste and the relationship between costs and sales. In fact, white Produce Specialists with worse shrinkage numbers were neither disciplined nor put on probation. [*Id.*, ¶¶ 13-14.]

Contee's 90-day probationary period was scheduled to end in December 2002, but he was injured and off work for the last 30 days and was told that he would be given an equivalent period upon returning, ostensibly to achieve his goals. On December 8, Contee filed a complaint of racial discrimination with the Equal Employment Opportunity Commission. Hayes was also aware of this complaint, and when Contee returned to work for his final 30 days on probation, Hayes assigned him to another district for half that time, impeding his ability to implement improvements in his own stores. [*Id.*, ¶¶ 15-16.]

Finally, in early 2003, Hayes told Contee that he was being demoted, and he was assigned to a position as a Human Resources manager at one store. Contee's new job had a salary range with a lower ceiling than Produce Specialist and did not have the opportunity for a bonus of the same magnitude. Contee has had no raises since 2003. [*Id.*, ¶¶ 17-18.]

The absence of raises is one indication that Giant is trying to force Contee out. Others include annual evaluations at the "needs improvement" level in March 2005 and March 2006. These low ratings mean that Contee did not receive raises; they also make him vulnerable to a future adverse employment action. In March 2005, Contee's immediate supervisor had initially given him a higher rating, which would have resulted in a raise, but upper management ordered him to lower Contee's rating to "needs improvement." This forced lowering of Contee's rating occurred after his counsel had contacted Giant's counsel concerning Contee's demotion from Produce Specialist and had informed Giant that Contee was considering a lawsuit alleging racial

discrimination. The officials in plaintiff's chain of supervision were aware of Contee's complaints of discrimination. [*Id.*, ¶¶ 19-22.]

In February 2006, Contee was transferred to an undesirable, underperforming store on Eastern Avenue in Maryland, just across the District line. His responsibilities include meeting with Giant customers who are D.C. residents at a church on Riggs Road, NE, in the District. [*Id.*, ¶ 21.]

## I.  THE MOTION TO DISMISS SHOULD BE DENIED

Defendants have moved to dismiss, arguing that plaintiff cannot satisfy any of the standards in the general venue statute, 28 U.S.C. § 1391(b), which they acknowledge applies to cases brought under 42 U.S.C. § 1981. Defendants' Memorandum in Support of Motion to Dismiss or to Transfer (Def. Mem.) at 3 n.3. But plaintiff's Amended Complaint easily meets the venue test set forth in § 1391(b)(1), so the motion to dismiss should be denied.

Sec. 1391(b), which governs cases (like this one) in which subject matter jurisdiction is *not* founded solely on diversity, prescribes three independent criteria for establishing venue in a particular district, the first of which is "a judicial district where any defendant resides, if all defendants reside in the same State." Under § 1391(c), "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction."

The Amended Complaint names only a single defendant – Giant of Maryland LLC – which defendant concedes is "subject to personal jurisdiction in the District of Columbia." Def. Mem. at 4. Thus Giant of Maryland LLC "resides" in the District of Columbia under § 1391(b)(1), and the District is also where "all defendants reside," since Giant is the sole defendant. Venue in the District of Columbia is proper under 28 U.S.C. § 1391(b)(1), and the motion to dismiss should be denied.

## II.  THE MOTION TO TRANSFER SHOULD ALSO BE DENIED

Under 28 U.S.C. § 1404(a), a case may be transferred to another district in which it could also have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." The Court of Appeals has noted that "the main purpose of section 1404(a) is to afford defendants protection where maintenance of the action in the plaintiff's choice of forum will make litigation oppressively expensive, inconvenient, difficult or harassing to defend."  *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc).  Given this statutory purpose, courts considering a motion under § 1404(a) must determine whether the defendant has "ma[d]e a convincing showing of the right to transfer," and has "demonstrate[d] that the balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 569 F.Supp. 773, 774 (D.D.C. 1983), quoted in (among other cases) *Thayer/Patricof Education Funding, LLC v. Pryor Resources, Inc.*, 196 F.Supp.2d 21, 31 (D.D.C. 2002).  See *Ross v. Product Development Corp.*, 736 F.Supp. 285, 291 (D.D.C. 1989) (RCL) (where injury in dispute occurred at the Pentagon, motion to transfer was denied given "the proximity of Arlington to Washington, D.C." and "the considerable weight that must be given to plaintiff's choice of forum," citing *Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980), cert. denied, 454 U.S. 1128 (1981)).

In general, in assessing a motion to transfer under 28 U.S.C. § 1404(a),

> a district court judge has greater discretion [than under forum non conveniens, but] the court should be guided by factors traditionally used in a forum non conveniens analysis. * * * Accordingly, the initial burden is on the moving party to establish that an alternative forum has jurisdiction over both the subject matter and the parties.
> * * *
> Once it is established that an adequate alternative forum exists, a court should evaluate the relevant "private" factors. * * * A nonexhaustive list of the relevant factors to be considered includes the convenience of the witnesses; ease of access to sources of proof; availability of compulsory process to compel the

5

> attendance of unwilling witnesses; the expense of willing witnesses; and the enforceability of a judgment, if one is obtained. * * * The balance of private factors should be viewed with a "strong presumption against disturbing plaintiffs' initial forum choice." * * * Plaintiffs' choice of forum thus becomes a very important factor in determining the balance of private factors.
>
> If the private factors are in at least "near equipoise," then the court should consider "public" factors. * * * The relevant public factors include, inter alia, holding the trial in a court whose state's law will govern the case and not imposing jury duty upon the people of a community that has no relation to the litigation.

*Beals v. Sicpa Securink Corp.*, 1994 U.S.Dist.LEXIS 7104 at *6-7 (D.D.C.) (RCL) (citations and footnote omitted).

In the present case, Giant has shown the availability of an alternative forum, the Federal court in Maryland. But Giant has not begun to show that litigation in Maryland would be significantly more convenient for either parties or witnesses. On the contrary, Exhibit B to Giant's motion shows that the potential witnesses live and work in the Washington metropolitan area, and appearing here for trial would be an easy matter. In addition, counsel for the parties are located in Washington, so the bulk of the discovery in this case – including the depositions of parties and witnesses – will likely be conducted in conference rooms in counsels' offices here in D.C., regardless of venue.

Here, as in *Beals*,

> Defendants have not demonstrated any particular inconvenience associated with a trial in Washington, D.C. * * * The convenience to the witnesses as well as ease of access to sources of proof are substantially similar in either location, compulsory process is available in both jurisdictions, the expense of trial in both sites are similar and a judgment, if obtained, can be enforced in either location.

1994 U.S.Dist.LEXIS 7104 at *13; see *Ross v. Product Development Corp.*, 736 F.Supp. at 291 (denying transfer in part because of "the proximity of Arlington to Washington, D.C.").

6

In short, Giant has not shown that trying this action in the District of Columbia will be "oppressively expensive, inconvenient, difficult or harassing to defend." *Starnes v. McGuire*, 512 F.2d at 927. In these circumstances, the plaintiff's choice of forum is crucial, as *Ross*, *Beals* and other cases have recognized:

> It is settled that a case should not be transferred "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980). Absent specific facts that would cause a district court to question plaintiffs' choice of forum, plaintiffs' choice is afforded substantial deference.

*Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 12 (D.D.C. 2000) (some citations omitted, including parallel citations). That is, "[t]he plaintiff's choice of a forum is 'a paramount consideration' in any determination of a transfer request. * * * The choice of forum is ordinarily afforded great deference, except when the plaintiff is a foreigner in that forum." *Thayer/Patricof*, 196 F.Supp.2d at 31 (citations omitted).

Ray Contee is not a "foreigner" in Washington, D.C. Contee was working at the Giant store in Friendship Heights in Washington at the time of his promotion to Produce Specialist in 2001 [Amended Complaint, ¶ 5]. His territory originally consisted of all the Giant stores in the District and some in suburban Maryland [*id.*, ¶ 8], and one of the early acts of discrimination he experienced was reassignment to a less desirable territory in Maryland and Virginia in July 2002, after he refused to comply with Kevin Hayes' demand for his resignation [*id.*, ¶ 11]. And as part of Giant's retaliatory campaign to force him out following his demotion, Contee was transferred in February 2006 to an underperforming store on the District line, where one of his responsibilities is to meet with D.C. customers in the District [*id.*, ¶ 21].

Contee does not live in the District, but this is not dispositive:

> While none of the plaintiffs is a resident of the District of Columbia, plaintiffs' choice of forum is still given some weight. The simple possibility of having a

7

slightly more convenient forum, especially when the alternative forum may not even be more convenient, cannot overcome plaintiffs' choice of venue.

*Beals*, 1994 U.S.Dist.LEXIS 7104 at *15.

Plaintiff has chosen a forum, the District of Columbia, with which he has meaningful ties. Giant has not shown how it would be inconvenienced, let alone subjected to "oppressive[] expens[e] . . . difficult[y] or harass[ment]," *Starnes v. McGuire*, 512 F.2d at 927, by litigating this action here. Giant's motion to transfer should be denied.

## CONCLUSION

Giant's motion to dismiss fails because plaintiff's Amended Complaint, which names only Giant of Maryland LLC as a defendant, plainly meets the standards of 28 U.S.C. § 1391(b)(1), since "all defendants reside" in the District of Columbia. The motion to transfer fares no better, since "maintaining this action in this court will not be unduly burdensome to either the remaining defendant or the witnesses likely to be called," especially "in light of the considerable weight that must be given to plaintiff's choice of forum." *Ross v. Product Development Corp.*, 736 F.Supp. at 291.

Giant's motion should be denied in its entirety.

                                                                /s/
                                       Douglas B. Huron   89326
                                       Stephen Z. Chertkof   451713
                                       Tammany M. Kramer   483146
                                       HELLER, HURON, CHERTKOF
                                     LERNER, SIMON & SALZMAN
                                     1730 M Street, NW
                                     Suite 412
                                     Washington, DC  20036
                                     (202) 293-8090

                                     Attorneys for plaintiff